## S10Y0723. IN THE MATTER OF ARTHUR F. MILLARD.
### (704 SE2d 779)

PER CURIAM.

This disciplinary matter presents an unusual example of an attorney who simply refuses to stop prosecuting either his client's case, or this disciplinary matter, despite repeated indications from the overseeing tribunal that his positions lack merit. It is before the Court pursuant to the Report and Recommendation of the Review Panel of the State Disciplinary Board which adopted the findings of fact and the conclusions of law set out in the report and recommendation of the special master, Elizabeth V. Tanis, who was appointed following the filing of a Formal Complaint by the State Bar. Respondent Arthur F. Millard (State Bar No. 505990) acknowledged service of the Formal Complaint which alleged that in his representation of his client, Millard violated Rules 1.1, 1.2 (a), 1.4, 1.7 (a), 1.16 (a), 1.16 (d) and 3.1 of the Georgia Rules of Professional Conduct, see Bar Rule 4-102 (d). Although the Bar Rules allow for disbarment for a single violation of some of these Rules, the Review Panel recommends that the Court impose a three-year suspension for Millard's conduct, and this Court agrees.

" 'This court is bound by the Review Panel's findings of fact when there is "any evidence" to support them.' " *In the Matter of Ellison*, 280 Ga. 303 (627 SE2d 25) (2006), citing *In the Matter of Morse*, 265 Ga. 353 (456 SE2d 52) (1995). Although the facts of this case are highly unusual and very extensive, the record contains evidence sufficient to support the Review Panel's findings, which we summarize as follows. A client retained Millard to represent her in municipal court in a case alleging that she violated a city ordinance. She was found guilty in September 2000 and sentenced to pay a $400 fine and serve three days in jail. Millard filed a motion for new trial, which was dismissed. Millard subsequently appealed to the superior court, apparently prosecuting the matter as a petition for certiorari and alternatively as a petition for habeas corpus and/or quo warranto. The city filed a counterclaim seeking attorney fees and expenses. Eventually, Millard's claims before the superior court were dismissed and Millard filed an application to appeal in the Court of Appeals which, because it lacked subject matter jurisdiction over habeas corpus cases, properly transferred the application to this Court where it was dismissed in May 2001 for failure to follow

interlocutory appeal procedures. At this point the client expressed to Millard her reservations about how the case was progressing and asked why she was being sued for attorney fees. Millard responded that he was working on the issues and that her repeated inquiries would only delay his work further. Millard then returned to the superior court and sought reconsideration of his petition for certiorari, which was promptly denied. Eventually, the city was awarded attorney fees and expenses in the amount of $9,503.59 on grounds that the petition for certiorari was untimely and the pleading was completely lacking a justiciable issue of fact or law since the assertion of the claims (including habeas) in a petition for certiorari from the municipal court was frivolous. Although Millard did not tell his client of the award of fees until some time the following year, the client eventually paid the fees awarded, with interest. In the meantime, following the award of fees, Millard filed a new application for appeal in the Court of Appeals which again transferred the matter to this Court where the application was denied. See *Northwest Social & Civic Club v. Franklin*, 276 Ga. 859, 860 (583 SE2d 858) (2003) (when appellate court "examines a request for a discretionary appeal, it acts in an error-correcting mode such that a denial of the application is on the merits").

Millard then started the process all over in July 2003, filing a second petition for writ of habeas corpus in the superior court, apparently seeking in addition to habeas relief, some sort of out-of-time relief from the municipal court conviction. His action was dismissed on the city's motion, both on the merits and on the basis of res judicata. Millard again appealed to the Court of Appeals, which again transferred the appeal to this Court, where it was dismissed in April 2005 for procedural deficiencies. In the meantime, the city moved for additional fees at which point Millard wrote his client admitting that "[he] had not bothered [her] previously with [the fees issue] because [he] knew [she] had enough on [her] mind and the important thing was to respond correctly and on time, which has been done." While the superior court was considering the request for fees, Millard sought his client's permission to withdraw on the grounds that she had not paid him. At an August 2005 hearing on the city's motion for fees, the client objected to Millard's withdrawal explaining that she did not know what else to do. The court refrained from ruling on the motion to withdraw at that point, but granted judgment against the client and Millard jointly and severally in the amount of $16,609.95, noting that the second habeas petition raised claims substantially identical to the claims raised in the first petition and that a motion to recuse, which Millard had filed, was frivolous. Rather than explain to his client the conflict of interest implications brought about by the joint and several award of fees and seek her

written consent to further representation, Millard advised her that he intended to withdraw his motion to withdraw as counsel and to appeal the fee award. Although Millard's client refused to consent to the withdrawal of his motion to withdraw as her counsel and asked him not to go forward with the appeal as she could not afford it, he nonetheless withdrew his motion to withdraw and proceeded in late 2005 to file applications to appeal on both his own and his client's behalf. Those applications to appeal were denied by this Court. Although Millard did not immediately tell his client that he had filed these appeals, he later sought reimbursement from her for the costs of the appeals.

In July 2006, the client filed a grievance with the State Bar regarding Millard's conduct in her case. At approximately the same time, the city filed post-judgment discovery requests in its efforts to collect its fee award. In a letter to his client regarding that discovery, Millard acknowledged the client's grievance; advised her that he did not hold it against her; and encouraged her to drop her Bar complaint and keep him as her lawyer. Millard also advised his client that because he had not "carried through with previously-initiated withdrawals" of counsel, he continued to be her counsel of record and that, as such, he must advise her that the Bar complaint was contrary to her interests and would distract him from addressing the issues that were actually adverse to her. Millard asserted that while the client was free to continue with the grievance, and while he would not charge her for the time he spent responding to the grievance, the grievance was contrary to her interests and most likely would be dismissed as lacking merit.

In the fall of 2006, after the client had advised the city that Millard no longer represented her, the superior court held a hearing on the city's motion to compel discovery responses from Millard and the client, in which the city also sought sanctions. At that hearing, Millard announced that he was appearing both pro se and on his client's behalf. Upon questioning from the court, the client advised that while she had initially objected to Millard's request to withdraw, she had subsequently told Millard that she no longer wished him to represent her; that she did not know what was going on; and that she just wanted the case to be over. Millard took the position that he still represented the client because he had a duty to continue (despite her requests to the contrary) until the court gave permission to cease the representation. The court then reminded the client that she had a judgment against her and asked if she wanted Millard to represent her, to which she responded "No sir. I want the case to be over. I don't know what its going to take to get it over. I don't want to pursue it. I can't afford it." The court confirmed Millard understood his client no longer wished him to represent her, and it obtained Millard's oral

representation that he would abide by her wishes and the court's rulings. In an order entered October 2, 2006, sanctions were awarded against both Millard and the client for failure to properly respond to post-judgment discovery. The city then offered to settle the matter and allow for payment of the judgment over time, but only if both Millard and the client agreed.

Less than a week after making the oral assurances to the court, Millard advised the client in an e-mail that he intended to continue to fight the fee awards and the underlying conviction; that the judges who had considered this case had all acted beyond their powers; that the municipal court judge was responsible for the untimeliness of her initial appeal; and that she would ultimately prevail if she carried through with the remedies that the law allowed. Millard then filed a motion to reconsider the court's October 2, 2006 order and continued to refuse to answer the post-judgment discovery. The city moved for contempt and sought further sanctions. At the hearing on those motions, Millard again advised the court that he was appearing both on behalf of himself and his client (asserting that, even if his client discharged him, he had an obligation to continue to represent her absent a court order) and continued to challenge all that had come before. The client again told the court that Millard did not represent her and that she wanted to settle with the city, but it refused to do so without Millard being a part of the settlement. Faced with incarceration for contempt, Millard and the client agreed to a settlement which set out an installment plan for paying the judgment; required them to dismiss pending cases arising out of the conviction; and forbade them from further pursuing any actions or appeals arising out of the conviction. Millard confirmed in open court that he agreed to these terms and a consent judgment was entered. The client then provided Millard with written confirmation that she did not wish for him to represent her, but Millard never sought to withdraw. Instead, Millard launched an attack on his and the client's behalf against the consent judgment, filing objections to the judgment in the superior court and applications for appeal in this Court, which were denied. He did not advise his client of these actions, nor did he have her permission to file anything on her behalf.

Millard has followed a similar approach in responding to this disciplinary matter, filing an insufficient Answer to the Formal Complaint, only to file a complete Amended Answer after the State Bar challenged the initial response; agreeing to resolve the matter by filing a petition for voluntary discipline, thereby slowing down the progress of the case, only to refuse to abide by that agreement later; filing copious discovery requests; pursuing meritless efforts to prohibit a deposition properly sought by the State Bar; making dubious representations to the special master; and asserting legal positions

that are, at best, far-fetched.

The special master correctly applied a "clear and convincing" evidence standard to this disciplinary matter, see Bar Rule 4-221 (e) (2), and concluded that the State Bar had shown that Millard repeatedly violated Bar Rules 1.1, 1.2 (a), 1.4, 1.7 (a), 1.16 (a), 1.16 (d) and 3.1 as alleged in the Formal Complaint, explaining in great detail exactly how each rule was violated. To summarize, the special master found that, taken together, Millard's actions revealed a basic disrespect of the core elements of the attorney-client relationship as well as blind adherence to his own objectives — including avoiding both his own mistakes and his personal liability for the sanctions awarded against him — seemingly without considering, and certainly without advising his client about the weakness of the positions he was taking and the dangerous consequences to which his actions exposed her or of the fact that he may be operating under a conflict of interest. Although the special master found that Millard had no prior disciplinary history, she noted, in aggravation, that Millard had failed to cooperate in the disciplinary proceedings; that he refused to acknowledge the wrongful nature of his conduct; that he demonstrated the same far-fetched interpretations of the Rules of Professional Responsibility, ignoring both their language and spirit in his efforts to justify his actions, as he did the law in his client's case; and that he displayed the same tendency in this proceeding as he did in his client's case to dishonor his word and disregard his responsibilities. Thus, the special master recommended a two-year suspension as the appropriate sanction for Millard's violations. Millard sought review from the Review Panel and filed a multitude of motions both with the special master and the Review Panel seeking to challenge the special master's recommendation. Ultimately, however, the Review Panel correctly denied Millard's motions (either on their merits or as moot) and adopted the findings of fact and the conclusions of law as set out in the report of the special master. It noted that under ABA Standards, disbarment is appropriate where, as here, a lawyer violates a court order or engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another and causing serious or potentially serious injury to the client. Nevertheless, the Review Panel recommended as appropriate discipline a three-year suspension with conditions on reinstatement.

Millard has filed lengthy exceptions to the Review Panel's recommendation and the State has responded, so that this Court may now enter judgment on the Formal Complaint. See Bar Rule 4-219 (a). After careful consideration of all the evidence submitted, the reports of the special master and the Review Panel, and the arguments advanced by all parties, we agree with the findings and

conclusions made by the special master and adopted by the Review Panel. Specifically, we find that Millard has violated Bar Rules 1.1, 1.2 (a), 1.4, 1.7 (a), 1.16 (a), 1.16 (d) and 3.1 as alleged in the Formal Complaint. Although we could specify the manner in which each rule was violated, suffice it to say that the record contains a plethora of evidence supporting the special master's findings and conclusions and that in his filings in this matter, Millard ignores the very large part that his own errors played in the progress of his client's case. We further agree that, although Millard has had no prior discipline, he has failed to cooperate in these disciplinary proceedings; he has refused to acknowledge the wrongful nature of his conduct; he has displayed a basic disrespect of the attorney-client relationship and the authority of the judicial system; and he has needlessly subjected his client to liability, after she made clear that she no longer desired his services.

Accordingly, for his violations of Bar Rules 1.1, 1.2 (a), 1.4, 1.7 (a), 1.16 (a), 1.16 (d) and 3.1, see Bar Rule 4-102 (d), Arthur F. Millard hereby is suspended from the practice of law for a period of three years beginning on the date of this opinion. In addition, Millard's reinstatement to the practice of law is conditioned upon his successful participation in the Law Office Management Program of the State Bar; his participation in six (6) hours of continuing legal education in the area of professionalism; his participation in six (6) hours of continuing legal education in the area of legal ethics; and his submission of documentation to the Office of General Counsel showing that he has been evaluated by a psychiatrist approved by the State Bar and that the evaluating psychiatrist is of the opinion that he is fit to resume the practice of law. Each of the conditions is to be fulfilled at Millard's expense. Millard is reminded of his duties under Bar Rule 4-219 (c).

*Three-year suspension. All the Justices concur.*

DECIDED JANUARY 10, 2011.

*Paula J. Frederick, General Counsel State Bar, Jonathan W. Hewett, Assistant General Counsel State Bar*, for State Bar of Georgia.